No. 23,717.

J. C. SANGER, *Appellee,* v. THE CITY OF KANSAS CITY, *Appellant.*

SYLLABUS BY THE COURT.

MOB VIOLENCE—*Three Persons Committing a Robbery on a Public Street Not a "Mob" Under the Statute.* A city is not liable under section 3822 of the General Statutes of 1915 for the damages sustained by one who is robbed on the street by three or more persons acting together.

Appeal from Wyandotte district court, division No. 3; WILLIAM H. McCAMISH, judge. Opinion filed May 6, 1922. Reversed.

*Hugh J. Smith, William Drennan,* and *Willard M. Benton,* all of Kansas City, for the appellant.

*J. H. Brady,* and *T. F. Railsback,* both of Kansas City, for the appellee.

The opinion of the court was delivered by

MARSHALL, J.: The defendant appeals from a judgment against it rendered under section 3822 of the General Statutes of 1915, the statute that makes cities liable in damages for the acts of mobs.

The evidence proved that the plaintiff had returned from a bank with $1,637 to use in his business in Kansas City; that when he got

to his place of business, he started to go from an automobile into his building; that he was there met by an armed man who demanded the money; that this man was assisted by two others seated in an automobile, one at the wheel with the engine running and the other in a seat with a revolver drawn and held on the plaintiff; and that the plaintiff, through fear of great bodily injury, delivered the money to the man on foot, who immediately got into the automobile and the three rapidly rode away. There was no tumult nor excitement. A demurrer to the plaintiff's evidence was overruled. The defendant did not introduce any evidence. A verdict was returned in favor of the plaintiff for $1,637, and judgment was rendered in his favor for that amount.

The right to recover under this statute has been upheld where an armed mob took a person from the county jail and hung him (*City of Atchison v. Twine*, 9 Kan. 350); where a prisoner was taken from the custody of the sheriff and killed while on the way to the penitentiary (*Adams v. City of Salina*, 58 Kan. 246, 48 Pac. 918); where one was injured while gathering information concerning the violation of law (*Iola v. Birnbaum*, 71 Kan. 600, 81 Pac. 198); where a charivari party took a bride and groom, placed them in a wagon in the nighttime, tumultuously drew it by hand up and down the street, and while doing so ran the wagon over a boy and injured him (*Cherryvale v. Hawman*, 80 Kan. 170, 101 Pac. 994); where a saloon keeper was injured and his property was destroyed (*Stevens v. Anthony*, 82 Kan. 179, 107 Pac. 557); where a number of prisoners, confined together in a city jail, combined and severely whipped another prisoner (*Blakeman v. City of Wichita*, 93 Kan. 444, 144 Pac. 816); where a city marshal, who was also a deputy sheriff, went with a number of persons pretending to act as a posse to the home of one charged with a felony, surrounded his house, engaged in a gun fight with him, and shot and killed him (*Harvey v. City of Bonner Springs*, 102 Kan. 9); where a body of about 200 men went from a city to a man's home outside the city limits, destroyed the house and carried away personal property (*Easter v. City of El Dorado*, 104 Kan. 57, 177 Pac. 538); where four policemen, plain clothesmen, with a warrant went to the home of a man, broke down the doors of the house, assaulted and beat him, ransacked the house, and frightened the members of the man's family, without exhibiting a warrant when requested to do so (*Moore v. City of Wichita*, 106 Kan. 636, 189 Pac. 372); where

members of a labor union assaulted and beat a member of a different union (*Sabins v. Kansas City*, 109 Kan. 133, 197 Pac. 860); and where one who had been active in the enforcement of the prohibitory liquor law was assaulted and beaten (*Wilkins v. City of Mineral*, 109 Kan. 46, 197 Pac. 863). The inability of the city to prevent the action of the mob is no defense. (*Iola v. Birnbaum*, 71 Kan. 600, 81 Pac. 198.)

It has not been held that three or more persons, who, under previous arrangement between themselves, rob a man on the street,. constitute a mob. That would make a mob of every band of three or more persons who combine to commit any crime and together. commit that crime. The legislature did not intend that any three men who deliberately plan to commit murder, robbery, burglary, arson, or any other felony, and who go together and commit that crime, should constitute a mob, under section 3822 of the General Statutes of 1915. If the legislature intended to accomplish that result, cities are responsible in damages for much of the crime committed within their limits. Until the legislature specifically says that cities are liable in damages for such crimes when committed by three or more persons, it must be held that cities are not liable under such circumstances.

The judgment is reversed, and judgment is rendered for the defendant.

BURCH, J., dissents.

WEST, J. (dissenting): The legislature of 1868 enacted article 8 of chapter 31 touching unlawful assemblies, being sections 3674 and 3675 of the General Statutes of 1915, and provided that—

"If three or more persons shall assemble together with intent to do any unlawful act with force and violence against the person or property of another . . . [they]. shall be fined in the sum not exceeding two hundred dollars."

The same legislature enacted chapter 32, making all incorporated cities and towns liable for all damages that may accrue from the action of mobs within their corporate limits whether such damages be loss. of property or injury to life and limb, being section 3822 of the General Statutes of 1915.

The first action brought under this mob statute was *The City of Atchison v. Twine,* in 1872, 9 Kan. 350. It was pointed out in the opinion that the first section of the act (present section 3822) was

Sanger v. Kansas City.

one of the laws of Canute, the Dane, afterwards recognized by our Saxon ancestors, and it was said:

"The public reason for the law was that every one should have an interest in the prevention and prosecution of such offenses." (p. 356.)

In 1897, the case of *Adams v. City of Salina*, 58 Kan. 246, 48 Pac. 918, was decided under the same statute. The legislature of 1903 enacted chapter 221, being section 3727 of the General Statutes of 1915, "An act providing for the suppression of mob violence, defining the crime of lynching, providing a penalty therefor." This section provides that any collection of individuals assembled for an unlawful purpose, intending to injure any person by violence or without authority, shall for the purpose of this act be regarded as a mob. This was twenty-five years after the original law was passed making cities liable for injuries caused by mobs.

In *Iola v. Birnbaum*, 71 Kan. 600, 81 Pac. 198, it was said of the original act:

"We think its purpose is rather to guard against a possible construction that should confine its operation solely either to injuries to property or to injuries to the person. The damages designated are not only those resulting from the destruction of life or limb, but those resulting from any injury to either—that is, from any bodily hurt." (p. 602.)

This shows quite clearly that lynching in the ordinary sense was not deemed necessary to maintain the action under this statute. In *Cherryvale v. Hawman*, 80 Kan. 170, 101 Pac. 994, an action for damages by a charivari party, it was said:

"In Kansas there is, and was when the law here invoked against the city was enacted, a statute in effect defining a riot, for it provides that 'if three or more persons shall assemble together with intent to do any unlawful act with force and violence against the person or property of another, or to do any unlawful act against the peace, . . . the person so offending . . . shall be fined' . . . The Kansas legislature, in passing an act the obvious reason of which is to make municipal officers more vigilant in suppressing unlawful assemblies, must be deemed to have had in mind the language of its own statute in that regard, rather than any one of the several definitions recognized by the common law." (pp. 172, 173.)

Numerous quotations follow showing that the words "riot" and "mob" are used interchangeably and are synonymous, and show also that even good-humored rioters may be as harmful as any others, and may constitute "a gathering of illegal trespassers." (p. 174.) In *Blakeman v. City of Wichita*, 93 Kan. 444, 144 Pac. 816, it was said that the plaintiff asserted that he was not seeking

to recover solely on the liability imposed by the statute "which makes cities liable for injuries to persons and property caused by a mob within the corporate limits" (p. 445), and it was declared that "a statute which has been in force since 1868 defines 'riotous assembly,' a term practically synonymous with 'mob,' as follows: . . . ," quoting from article 8, chapter 31 of the act of 1868, also the act of 1903, defining a mob.

In *Harvey v. City of Bonner Springs*, 102 Kan. 9, 169 Pac. 563, this language was used:

"The statute defines a 'mob' as 'any collection of individuals assembled for an unlawful purpose, intending to injure any person by violence, and without authority of law.'" (p. 21.)

In *Moore v. City of Wichita*, 106 Kan. 636, 189 Pac. 372, the syllabus, paragraph 3, is as follows:

"Instead of using the dictionary definition of a mob, the court gave the jury the statute concerning the liability of cities for the action of mobs therein. Held, sufficient."

In the Blakeman case, *supra,* the prisoners in the county jail organized an ordinary kangaroo court, a thing of barbaric and despicable cruelty still permitted in some jails in this country. The purpose was to collect a fine of fifty cents from the recruit who had just been tried. These people did not voluntarily assemble in the jail, but were assembled most involuntarily. They were there for the accomplishment of no purpose, but simply because they could not get out. How these men immured within the walls of the county jail could by assaulting and beating a fellow prisoner for refusing to pay a fine of fifty cents, constitute a mob and three highway robbers could not, is beyond my comprehension. We are told that this would make a "mob of every band of three or more persons who combine to commit any crime and together commit that crime." (*Ante,* p. 264.) What then? If such a band commits a crime, or injures one's personal property, how could we have a more precise example of what the legislature manifestly intended by passing the original mob statute?

Few enactments have received longer or more repeated unanimity of construction than this, and during all the lapse of years since *City of Atchison v. Twine*, the lawmaking power has refrained from amending or repealing this most carefully and thoughtfully construed statute. To my mind there is no saving grace in highway robbery which elevates an assembly of three who jointly commit it

to a higher moral or legal plane than the same number of robbers who commit merely a misdemeanor.

If the settled construction is found to cast too great a burden on cities where highway robbers infest the streets, the legislature and not the courts should attend to the matter of amendment or repeal.