No. 25,917.

JACOB BERBERICK, *Appellee*, v. THE CITY OF TOPEKA, *Appellant*.

SYLLABUS BY THE COURT.

MUNICIPAL CORPORATIONS—*Mob Violence—Liability for Injuries.* Although any assemblage of five or more persons with intent to do an unlawful act with force and violence against the person or property of another ordinarily constitutes a mob, for whose injuries the city in which the act takes place is liable, no such liability exists on account of the injury to a prisoner in a county jail located within the city limits, resulting from the acts of other inmates while conducting a "kangaroo court," the reason for such immunity being that the city officers and individuals have no authority to interfere with the sheriff's management of the jail, and the mob statute cannot be regarded as intended to apply in such a situation.

Appeal from Shawnee district court, division No. 2; GEORGE H. WHITCOMB, judge. Opinion filed November 7, 1925. Reversed.

*Ralph T. O'Neil,* of Topeka, for the appellant.

*Paul H. Ditzen,* of Kansas City, and *D. H. Branaman,* of Topeka, for the appellee.

The opinion of the court was delivered by

MASON, J.: Jacob Berberick was committed to the jail of Shawnee county. Some twenty-three of the other inmates organized a "kangaroo court," as a result of the proceedings of which they assaulted him, inflicting temporary injury. He brought this action against the city of Topeka under the statute making all cities liable for damages accruing from the actions of mobs within their limits (R. S. 12-201), and recovered a judgment for $250, from which the defendant appeals.

The plaintiff relies upon the decision of this court upholding the right of a prisoner in a city jail to recover under similar circumstances. (*Blakeman v. City of Wichita,* 93 Kan. 444, 114 Pac. 816.) The city makes the contention—to which we agree—that the present case is distinguishable from that cited, on the ground that the statute should not be interpreted as applying here because the injury was inflicted by persons who were held in custody by the sheriff in the place provided by the statute for their detention, and who were therefore beyond the control of the officers of the city. The cases

Municipal Corporations, 28 Cyc. p. 1296; 13 A. L. R. 770; 23 A. L. R. 300; 19 R. C. L. 1105; 10 L. R. A., n. s., 925; L. R. A. 1918C, 239; 19 R. C. L. 1104.

arising under similar statutes are collected in a recent note. (13 A. L. R. 751; 23 A. L. R. 297.) Few of them shed much light upon the precise question here involved. There is a general agreement that the statutory liability is not based upon the negligence of the city officers, and the fact that the injury could not have been prevented by them constitutes no defense. The policy of the law has been well stated to be "to make good, at the public expense, the losses of those who may be so unfortunate as, without their own fault, to be injured in their property by acts of lawless violence of a particular kind which it is the general duty of the government to prevent; and further, and principally we may suppose, to make it the interest of every person liable to contribute to the public expenses to discourage lawlessness and violence, and maintain the empire of the laws established to preserve public quiet and social order." (*Darlington v. Mayor, &c., of New York,* 31 N. Y. 164, 187.) Because mob statutes are intended to visit penalties upon persons who in particular cases may have been innocent of any fault, courts have been disposed to administer them according to their literal terms, without resorting to implied exceptions to relieve against their occasional harsh results. As in other cases, however, the purpose is to ascertain and give effect to the real legislative intent. An Illinois act, which by its terms fixed liability for the destruction of property by a mob upon the city in which it was destroyed, was held to apply only where the mob acted within the city limits—a matter concerning which the statute was silent. The court said:

"Even when the literal enforcement of a statute will result in inconvenience and great hardship and lead to consequences which are absurd, the courts will presume no such consequences were intended and adopt a construction which is, in its consequences, in accordance with reason and which will promote the ends of justice and avoid the absurdity." (*Sturges v. City of Chicago,* 237 Ill. 46, 51.)

A mob, in the sense in which the term is used in the statute now under consideration, is held to exist whenever five "or more persons shall assemble together with intent to do any unlawful act with force and violence against the person or property of another." (R. S. 21-1001; *Cherryvale v. Hawman,* 80 Kan. 170, 101 Pac. 994; *Blakeman v. City of Wichita,* supra.) But a city is not liable for injuries resulting from crimes of violence, such as robbery, committed by three or more persons acting in unison. (*Sanger v. Kansas City,*

111 Kan. 262, 206 Pac. 891.) Such affairs, although literally within the language quoted, are held not to be within its spirit or within the legislative intention. (*Sanger v. Kansas City,* supra.)

In the Wichita case stress was laid upon the fact that while the persons constituting the mob were in custody of the law, they were peculiarly within the control of the city officers, the court saying:

"Custody of prisoners within jail limits is hardly consistent with the lack of power and ability to control them. . . . The city is vested with the power and charged with the duty of preventing mob violence and preserving the peace everywhere within its corporate limits, and it should be easier to discharge that duty where those who are engaged in the riot are in custody and could be controlled by the officers without much difficulty. . . . Certainly it cannot hope to escape responsibility where it appears that the city could easily have prevented the injury. . . .

"In view of the purpose of the statute and the obligations resting upon municipalities, it must be held that neither the delinquencies of the officers nor their misconduct can absolve the city from the obligation to preserve the peace and to prevent mob violence." (*Blakeman v. City of Wichita,* supra, pp. 448, 449.)

In the present case in order to absolve the city from liability we need not regard the county jail as being outside the territorial jurisdiction of its officers. The sheriff has charge of the jail and its inmates and is responsible for the manner in which it is kept. (R. S. 19-811, 19-1903.) For practical purposes it is wholly beyond the lawful interference of individuals or municipal officers. In a case where two deputy constables were convicted of unlawfully resisting the sheriff by refusing to surrender to him a prisoner, whom they claimed to be holding under a prior arrest, it was said:

"Officers charged with identical duty to preserve the public peace, suppress riots and affrays, and bring to punishment violators of the criminal laws, must not cast off that duty and turn raging combatants of each other. To do so is to thwart the purpose of the state in appointing them. In this instance it led to the escape of the prisoner fought over, and to murder.

"The defendants, however, were not equal in authority with the sheriff. If the constable had been present when the sheriff appeared, the sheriff would have had the right to supersede him. It is true that a constable exercises powers of the same general character as those of a sheriff respecting preserving the public peace, apprehending criminals, and the like. . . . But the sheriff is the state's chief executive and administrative officer in his county. In the exercise of executive and administrative functions, in conserving the public peace, in vindicating the law, and in preserving the rights of the government, he represents the sovereignty of the state, and he has no superior in his county. When a situation arises like that which confronted the community of Rolla on July 22, 1916, it becomes the sheriff's right, and it is his

duty, to determine what the public safety and tranquillity demand, and to act accordingly. He must, of course, act according to law; but if, holding a felony warrant, he should deem it necessary to take custody of a disturber, held by a constable under a misdemeanor warrant, it is his duty to do so, and it is the duty of the constable to yield. In such a case the justification of the constable lies in the rightful exercise of overruling authority by the sheriff." (*State v. McCarty,* 104 Kan. 301, 305, 179 Pac. 309.)

A reversal is ordered, with directions to render judgment for the defendant.