No. 29,393.

DANIEL P. SEIGLER, *Appellee*, v. THE CITY OF KANSAS CITY, *Appellant* (et al., *Defendants*).

(292 Pac. 937.)

Opinion filed November 8, 1930.

*L. S. Harvey, Alton H. Skinner* and *John C. O'Brien*, all of Kansas City, for the appellant.

*Frank Thompson, J. H. Brady* and *N. E. Snyder*, all of Kansas City, for the appellee.

The opinion of the court was delivered by

MARSHALL, J.: The plaintiff sued the city of Kansas City and the other defendants for damages caused by injuries inflicted on him by a mob in that city. Judgment was rendered against the city in favor of the plaintiff for the sum of $8,000. Judgment was rendered in favor of the other defendants against the plaintiff. The city appeals.

1. At the close of the evidence for the plaintiff the city demurred thereto. The demurrer was overruled. The city argues it was error for the court to overrule its demurrer to the evidence of the plaintiff. This necessitates a brief summary of the evidence.

There was evidence which tended to prove that the plaintiff had purchased an Essex automobile from the defendants, Earl S. Davidson and Fred Davidson, partners doing business under the name of the Davidson Motor Company; that the automobile proved unsatisfactory; that the plaintiff drove the car about the city with a sign attached to the automobile in the following language: "Buy

an Essex and worry with me. I bought this Essex from Davidson Brothers, Kansas City, Kan., and I am sorry now." That the plaintiff drove the car with the sign attached thereto on the street adjoining the business place of the Davidson Motor Company; that Clive Muir, an employee of the company, saw the plaintiff driving the automobile; that Muir followed the plaintiff, overtook him, had a conversation with him concerning the operation of the car, asked him to drive the car back to the Davidson garage, and stated that he would have the car repaired; that the plaintiff drove the automobile back to the garage, where Muir began to work on it for the purpose of making repairs; that an altercation occurred between the plaintiff and Clive Muir; that some of the employees of the Davidson Motor Company commenced to remove the sign from the automobile; that the plaintiff forbid the employees from removing the sign; that a fight immediately resulted in which seven men then in the garage struck, kicked and beat the plaintiff, knocked him down several times and severely injured him.

It is argued that the facts which the outlined evidence tended to prove did not show that the plaintiff had been injured by a mob within the meaning of section 12-201 of the Revised Statutes, which reads:

"All incorporated cities and towns shall be liable for all damages that may accrue in consequence of the action of mobs within their corporate limits, whether such damage shall be the destruction of property or injury to life or limb: *Provided, however,* That the number of persons that shall constitute a mob under this act shall be five or more."

It is necessary to review the mob cases that have been decided by this court. In *Sanger v. Kansas City,* 111 Kan. 262, 263, 206 Pac. 891, is found a review of the cases that had been decided at that time. To show what was then said, we quote from the opinion in that case, as follows:

"The right to recover under this statute has been upheld where an armed mob took a person from the county jail and hung him (*City of Atchison v. Twine,* 9 Kan. 350); where a prisoner was taken from the custody of the sheriff and killed while on the way to the penitentiary (*Adams v. City of Salina,* 58 Kan. 246, 48 Pac. 918); where one was injured while gathering information concerning the violation of law (*Iola v. Birnbaum,* 71 Kan. 600, 81 Pac. 198); where a charivari party took a bride and groom, placed them in a wagon in the nighttime, tumultuously drew it by hand up and down the street, and while doing so ran the wagon over a boy and injured him (*Cherryvale v. Hawman,* 80 Kan. 170, 191 Pac. 994); where a saloon keeper was injured and his property was destroyed (*Stevens v. Anthony,* 82 Kan. 179, 107 Pac. 557);

where a number of prisoners, confined together in a city jail, combined and severely whipped another prisoner (*Blakeman v. City of Wichita,* 93 Kan. 444, 144 Pac. 816); where a city marshal, who was also a deputy sheriff, went with a number of persons pretending to act as a posse to the home of one charged with a felony, surrounded his house, engaged in a gun fight with him, and shot and killed him (*Harvey v. City of Bonner Springs,* 102 Kan. 9); where a body of about 200 men went from a city to a man's home outside the city limits, destroyed the house and carried away personal property (*Easter v. City of El Dorado,* 104 Kan. 57, 177 Pac. 538); where four policemen, plain-clothes men, with a warrant went to the home of a man, broke down the doors of the house, assaulted and beat him, ransacked the house, and frightened the members of the man's family, without exhibiting a warrant when requested to do so (*Moore v. City of Wichita,* 106 Kan. 636, 189 Pac. 372); where members of a labor union assaulted and beat a member of a different union (*Sabins v. Kansas City,* 109 Kan. 133, 197 Pac. 860); and where one who had been active in the enforcement of the prohibitory liquor law was assaulted and beaten (*Wilkins v. City of Mineral,* 109 Kan. 46, 197 Pac. 863)."

In *Hendren v. Arkansas City,* 122 Kan. 361, 252 Pac. 218, it was held that—

"Where a large number of men and boys of a city started good-humoredly and without evil intent to have some fun with plaintiff, a simple person, who held diverting delusions about his talents, but where, after they assembled, five or more of their number then determined to harass, annoy and humiliate him, and in doing so, in a violent and turbulent manner, did injure the plaintiff, an instruction that, if such facts were established, the city would be liable in damages to plaintiff under the provisions of the mob statute (R. S. 12-201) was a correct statement of the pertinent law." (Syl. ¶ 2.)

The city relies on *Sanger v. Kansas City,* 111 Kan. 262, 206 Pac. 891, and on *Koska v. Kansas City,* 123 Kan. 362, 255 Pac. 57. In *Sanger v. Kansas City,* supra, the court said that—

"A city is not liable under section 3822 of the General Statutes of 1915 [the mob statute] for the damages sustained by one who is robbed on the street by three or more persons acting together." (Syl.)

In *Koska v. Kansas City,* supra, it was held that four men who went to the home of the plaintiff at two o'clock in the morning, there stated they wanted to see her husband, and, upon being informed by the plaintiff he was not at home but was at work, broke open the doors and forced an entrance into the house, which they ransacked, from which they stole money, and in which they trampled on the children of the plaintiff sleeping on the floor and beat the plaintiff, did not constitute a mob. That occurred in 1921, before the statute was amended so as to make it necessary for a mob to be composed of five or more persons. The court there said:

"The civil liability imposed on cities by R. S. 12-201 for damages that accrue in consequence of the action of mobs does not include damages for crimes generally." (Syl. ¶ 3.)

The distinction between *Sanger v. Kansas City*, supra, and the present case is that there three persons combined to commit a crime and committed that crime without excitement or tumult. Here, there was both excitement and tumult and no crime was intended other than personal injury to the plaintiff. In *Koska v. Kansas City*, supra, the basis for the decision of the court was that a city is not liable in damages for the joint action of a number of persons in committing crimes generally. The opinion in that case does not show there was any excitement or tumult. It does show a burglary and robbery, and thereafter an assault on the plaintiff. In both *Sanger v. Kansas City* and *Koska v. Kansas City*, crimes other than injury to the plaintiffs therein were committed; here, no crime except an assault and battery on the plaintiff was committed.

In *Berberick v. City of Topeka*, 119 Kan. 552, 240 Pac. 968, the city was held not liable. The court there said:

"Although any assemblage of five or more persons with intent to do an unlawful act with force and violence against the person or property of another ordinarily constitutes a mob, for whose injuries the city in which the act takes place is liable, no such liability exists on account of the injury to a prisoner in a county jail located within the city limits, resulting from the acts of other inmates while conducting a 'kangaroo court,' the reason for such immunity being that the city officers and individuals have no authority to interfere with the sheriff's management of the jail, and the mob statute cannot be regarded as intended to apply in such a situation." (Syl.)

An extensive discussion of what constitutes a mob is found in *Koska v. Kansas City*, supra. Within the definitions there given, and within the decisions of this court under the statute, it was not error for the court to overrule the demurrer to the evidence of the plaintiff.

2. The city argues that the verdict and judgment for $8,000 is excessive. There was evidence which tended to prove that the plaintiff was cut and bruised and was taken from the garage in a semiconscious condition; that he was confined to his bed for somewhere between one and two weeks; that at the time of the trial he had not recovered from his injuries, and that the injuries then sustained by him would be permanent. There is no rule by which the damages in such a case can be measured. The amount of recovery must be left largely to the judgment of the jury. But this court has

often said that where the amount recovered for injuries sustained is so large as to shock the conscience of the court, it will reduce the amount of recovery or grant a new trial if the plaintiff does not deem it best to accept the amount allowed by this court. After an examination of the evidence the court reaches the conclusion that the amount of the judgment in favor of the plaintiff is entirely too large. For that reason the trial court is directed to reduce the judgment in favor of the plaintiff to $5,000, if the plaintiff will accept judgment for that amount; if he refuses, a new trial is directed.

If the judgment for $5,000 is accepted, it is affirmed; if it is not accepted, the judgment for $8,000 is reversed, and a new trial is directed.

HARVEY, J., not sitting.