Mr. Justice Moore
delivered the opinion of the Court.
Plaintiffs in error were defendants in the trial court and defendants in error were plaintiffs. We will refer to the parties as they appeared in the district court.
The case involves the validity of a contract between the City of Englewood and the New Englewood Company under the terms of which the latter agreed to purchase land theretofore used for park and recreational purposes. The action also involves the validity of a rezoning of some 63 acres of land, including the park property, which was brought about in order that the land use contemplated by the purchaser would be validated.
The trial court found all of the issues, except one, in favor of the defendants who caused writ of error to issue directed to the one portion of the judgment which adversely affected them. The plaintiffs in their answer brief assign cross-error and seek reversal of the judgment of the trial court upholding the contract and the rezoning of the property. The issues which were orally argued at length and which are stressed in the briefs relate to the cross-errors which form the major controversy between the parties.
The City of Englewood is a home rule city operating under a charter. Section 72 of the charter provides that lands used by the city for park purposes shall not be sold or conveyed without majority vote of the people. A contract of sale between the defendant City of Englewood and the defendant New Englewood Company providing for the sale by the city of the downtown park area to New Englewood Company was submitted to a vote of the *596 qualified electors of Englewood at a special election held on April 7, 1964, as People’s Ordinance No. 1, Series of 1964. A majority of the voters approved this contract and the sale of the subject park land, which would become the site of an extensive shopping center complex.
The City of Englewood on August 3, 1964, passed Ordinance No. 16, Series of 1964, which provided for the rezoning of the subject park land and certain other adjoining lands from a residential to a commercial classification. A referendum petition was filed to refer Ordinance No. 16, Series of 1964, to a vote of the people. The city council thereupon called a special election to be held on November 3, 1964, to submit Ordinance No. 16 to a vote of the qualified electors of the city. At the same time the council determined to submit two related ordinances to a vote of the people at the same election. One of these proposed ordinances provided for vacation of streets, alleys and public ways on the subject land and the other proposed ordinance authorized the city to lease certain property adjacent to the subject land as a city hall.
On August 31, 1964, plaintiffs filed their complaint in the district court setting forth a number of grounds in opposition to the proposed shopping center complex. They also moved for a preliminary injunction enjoining the special election scheduled for November 3, 1964. At the hearing of this motion on October 6, 1964, the trial court entered a preliminary injunction staying the election until after April 7, 1965. This injunction was dissolved by order of this court in City of Englewood v. Save the Park Association, 155 Colo. 548, 395 P.2d 989.
The special election of November 3, 1964, resulted in a favorable vote on the three subject ordinances, thereby clearing the way for closing the contract and for construction of the proposed shopping center complex upon final determination of the questions involved in this case.
Some 8.3 acres of the park land covered by the contract are presently being operated as a golf course by the defendant Mountain View Golf Club, under the terms *597 of a 99-year lease. The lessee and the New Englewood Company have reached an agreement under which any interest of the Mountain View Golf Club in the 8.3 acres will be acquired by the New Englewood Company.
We will first give consideration to the questions raised by the cross-errors assigned by the plaintiffs by which they seek to invalidate the contract, prevent the construction of the shopping center complex which was overwhelmingly approved by the voters, and nullify the change in the zoning classification in the area. As grounds for reversal of the judgment it is argued:
“I. The election was held prematurely.
“II. Cities have no legal right to enter into long-term ‘tax-dodging’ agreements with commercial enterprises for the exploitation of surplus municipal real estate.
“ (a) The agreement with Mountain View is void.
“ (b) The agreement with New Englewood is void.
“III. Municipalities cannot lawfully sell public lands for a grossly inadequate consideration.
“ (a) The city is selling the fee to the golf course and not the reversion.
“(b) The city is standing by and permitting the defendant Mountain View to sell city-owned lands and pocket the proceeds therefrom.
“IV. If park property can be sold at all, the sale requires a vote of the taxpaying electors.
“V. The change of zoning from R-l-C to B-l was arbitrary and void.”
At this point we direct attention to certain findings entered by the trial court with relation to the several pronged attack of plaintiffs upon the validity of the 99-year lease of 8.3 acres to the golf club. This argument appears under point II (a) and points III (a) and (b) which we have quoted above from the Summary of Argument of the plaintiffs. Upon this phase of the case the trial court found, inter alia, as follows:
“Insofar as the Fourth Claim for Relief is concerned, the City through the contract with New Englewood Com *598 pany is divesting itself of the ownership of the 8.3 acres now leased by the Defendant Mountain View. If such leasing were improper it is now being corrected. If New Englewood Company wishes to pay the lessee some $300,000.00 for whatever leasehold interest the latter may have, that is a matter for its sole determination. There was no evidence to show that the sales price of $1,000,000.00 for the entire tract, including the 8.3 acres, is inadequate.”
We hold that these conclusions of the trial court are correct and are a complete answer to the full argument of plaintiffs which is presented in support of their contention that the lease to the golf club is invalid. We are not concerned here with a dispute between the lessor and the lessee involving the validity of the lease. Assuming for the purpose of argument that the lease is invalid (a question which we do not decide) the New Englewood Company would need only to secure a deed from the city and, as the fee owner, bring ejectment against the golf club. The plaintiffs are in no position to take advantage of the fact that the New Englewood Company is willing to pay a consideration to the golf club in order to acquire whatever interest the latter has under the 99-year lease. We are in complete agreement with the trial court in its conclusion that the evidence failed to show that the $1,000,000.00 sale price and the other agreements of the purchaser to reconvey a substantial area and to establish and maintain a parking area thereon, was inadequate. It is completely immaterial to any issue in this case whether the New Englewood Company is willing to pay a consideration to the Mountain View Golf Club for any rights which might be asserted based on the lease under which the golf club has been in possession of 8.3 acres for over fifteen years.
In connection with the contention that “The election was held prematurely” the argument is made that the election of April 7, 1964, was an “initiated” election which was held less than 30 days after the effective date *599 of the ordinance calling it, in violation of Article XX, Section 5 of the Colorado Constitution. The pertinent language of this section is as follows:
“The City Council * * * on its own initiative, may submit any measure * * * at any general or special state or municipal election * *
A comparable provision is contained in the charter of the city, which is Article VI thereof, as follows:
“The Council, on its own motion, shall have the power to submit any proposed ordinance to a vote of the people at a general or special election as provided in this charter.”
In City of Englewood v. Save the Park Association, supra, this court held that the election of April 7, 1964, was not held under the above quoted initiative procedures of Article VI of the charter. We quote from that opinion the following:
“The election held on April 7, 1964, was not pursuant to Article VI, but was mandatory by reason of another charter provision in Article IX, section 72, which states: <* * * Neither lands granted to, purchased, or used by the City for park purposes, * * * shall be sold or conveyed without majority vote of the people * *
 Upon the issue under discussion the trial court in the instant case decreed, inter alia:
“That the election held on April 7, 1964, was held under the provisions of Article IX, Section 72, of the City Charter of the City of Englewood. That Article VI of the City Charter, entitled ‘Initiative and Referendum,’ was not applicable thereto. That this election was held pursuant to the provisions of Article XX, Section 6, of the State Constitution, and that the City had through authority contained in the Charter in Article II, Section 10, conducted such election in accordance with the State statutes.”
In reaching this conclusion the trial court properly followed the law of the case as announced by this court in City of Englewood v. Save the Park Assn., supra. The *600 election was not prematurely held. Furthermore, the objection that the election was held less than 30 days after the effective date of the ordinance or resolution, is not well taken. The election in question was called by resolution of the city council which was adopted February 3, 1964, as authorized by Article Y, Section 36 of the city charter. Adoption of a resolution is a proper procedure to be used in calling an election and a resolution is “effective” upon the date of adoption. People ex rel. Moore v. Perkins, et al., 56 Colo. 17, 137 Pac. 55.
We turn now to consideration of that portion of the judgment in which the court decreed that the contract for the sale of the park land was in all respects valid and enforceable, “* * * except that the Court does find that Paragraph 9 (c), which purports to grant to New Englewood Company the exclusive right to use of five percent of the proposed public parking area, is beyond the powers granted to the City.”
No evidence regarding paragraph 9 (c) of the contract was introduced by any party except the contract itself. Therefore, determination of this point can be made solely upon a legal construction of paragraph 9(c) under the test of Section 25, Article V and Section 4, Article XX of the Colorado Constitution. The pertinent provisions of paragraph 9 as related to Section (c) are as follows:
“9. Subject to the provisions of this section, Purchaser agrees that after closing of title and completion of the construction of improvements upon the Premises and upon certain other lands adjoining the Premises it will convey or cause to be conveyed to Seller real property upon which is located from 2,000 to 4,000 automobile parking spaces and Seller agrees to accept such conveyance. The area to be conveyed will be designated by Purchaser and the real property interests may be divided in any lawful manner. Such conveyance ... (c) shall reserve to Purchaser rights to run public utility lines and similar services through the conveyed property and the right to use up to five percent of the area of the con *601 veyed property for uses connected with the uses of the property being retained . .
Section 25 of Article V of the Colorado Constitution prohibits the General Assembly from “granting to any corporation, association or individual any special or exclusive privilege, immunity or franchise whatever.” Section 4 of Article XX of the Colorado Constitution provides in the last paragraph that “No franchise relating to any street, alley or public place of the said city and comity shall be granted except upon the vote of the qualified taxpaying electors * * *.”
The word “franchise” is defined in 23 Am. Jur. at 715, as “the privilege of doing that ‘which does not belong to the citizens of the country generally by common right.’ ” One of the leading American cases defining franchise is California v. Central Pacific Railroad Company, 127 U. S. 1, 8 S. Ct. 1073, 32 L. Ed. 150 (1888), where a franchise is defined as “a right, privilege or power, of public concern, which ought not to be exercised by private individuals at their mere will and pleasure, but should be reserved for public control and administration * *
It is clear from the definition of franchise and from the manner in which the word is used in the Colorado Constitution that paragraph 9(c) of the contract does not constitute a franchise. The contract as a whole provides for this sequence of events:
(1) Conveyance by the City of Englewood of the subject lands to New Englewood Company;
(2) Construction of improvements on the property including a parking area;
(3) Reconveyance by New Englewood Company of the parking area reserving the right to use up to five per cent of that area for connected purposes.
The city first conveys the land to the New Englewood Company for which it receives one million dollars. The company erects improvements thereon making up the shopping center, upon completion of which it agrees to *602 reconvey to the city “real property upon which is located from 2,000 to 4,000 automobile parking spaces” which shall be maintained for sixty years at the expense of the company. The reservation of “five percent of the area of the conveyed property for uses connected with the uses of the property being retained by the seller” does not amount to “granting to any corporation * * * any special or exclusive privilege, immunity or franchise,” nor does it amount to the granting of a “franchise relating to any street, alley or public place of the said city * * *” without a “vote of the qualified taxpaying electors.”
The provisions of paragraph 9 (c) of the contract under discussion is nothing more than the reservation of a right in property which the owner thereof retains in itself upon conveyance of a major interest in that property to the city. The interest thus retained is an interest in real property and nothing contained in this opinion shall be construed as exempting it from assessment and taxation. The trial court erred in holding that paragraph 9(c) of the contract was unenforceable. The judgment in that connection is therefore reversed.
 We have examined the arguments in which it is urged that the sale of park property, if it can be sold for any purpose, can only be disposed of upon a vote of the “taxpaying electors” as distinguished from a vote of the “people”; and have carefully considered the contention of the plaintiffs that the change in zoning from R-l-C to B-l was arbitrary and void. We find no merit in these arguments and hold that no error was committed by the trial court with relation thereto.
The judgment is reversed insofar as it invalidated paragraph 9(c) of the contract. In all other respects the judgment is affirmed.